UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEREK MONTEZ, | § | |
| TDCJ #1434316, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-11-1891 |
| | § | |
| CODY HAMPTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

State inmate Derek Montez (TDCJ # 1434316) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the conditions of his confinement at the Wynne Unit of the Texas Department of Criminal Justice—Correctional Institutions Division ("TDCJ") located north of Huntsville in Walker County, Texas [Doc. # 1]. Specifically, Montez complains of retaliation by TDCJ officials. At the Court's request, Montez filed a more definite statement of his claims. After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court dismissed three individual Defendants named in the complaint[1] and authorized service on the remaining Defendants. Defendants

---

[1] Montez sued Donna Curtis, Tiffany Tomakavitis, and Brittany Turner for performing their duties as counsel substitutes. The Court dismissed these defendants

(continued . . .)

Captain Bruce Baggett, Officer Clara Anderson, Captain Lonnie E. Townsend, Warden Tony O'Hare, and Warden Vernon Pittman have filed a motion for summary judgment supported by documentary evidence.[2]  After reviewing all of the pleadings and applicable law, the Court concludes that the motion must be **granted** and that the case must be partially **dismissed** for the reasons that follow.

## I.   FACTUAL BACKGROUND

Montez is currently incarcerated at the TDCJ Allred Unit, but his claims concern several disciplinary convictions against him while assigned to the Wynne Unit.

### A.   Montez's Allegations and Proof

Montez's complaint focuses on his confrontations with Lieutenant (formerly Sargent) Cody Hampton at the Wynne Unit.  He alleges that Lt. Hampton verbally harassed him and then retaliated against him for reporting his abusive behavior. He submits affidavits from other inmates who substantiate his allegations that Lt. Hampton verbally abused and harassed him [Doc. # 48-2, pp. 1-3].

---

because they were not acting under color of law while serving as prisoner advocates in a prison administrative hearing.

[2]      Two defendants, Lieutenant Cody Hampton and Assistant Warden Thomas Pierce have not joined in the motion, but have not appeared in this case.  Both are former TDCJ employees who have been served [Docs. # 31, # 32 (sealed)].

Montez reports that he had a verbal confrontation with Lt. Hampton while he was dressing in the showers on October 14, 2009 [Doc. # 1, p. 4].   Montez was placed in pre-hearing detention and was subsequently charged with violating TDCJ rules by creating a disturbance and disobeying a direct order (TDCJ Disciplinary Case # 20100045020 ("Case # 020")).   *Id.*   Montez appeared at the disciplinary hearing before Captain Baggett on October 21, 2009.   *Id.* at 5.   After hearing testimony from Montez and Lt. Hampton, Captain Baggett found Montez guilty as charged and assessed the following punishments: 15 days of solitary confinement; 45 days of cell restriction; 45 days without commissary privileges; a reduction in custodial classification from State Approved Trusty IV to Line Class II; and a forfeiture of 30 days of previously earned credit for good conduct (*i.e.*, good-time credit) [Doc. # 1, p. 5].   Montez filed TDCJ administrative step 1 and step 2 grievances challenging the outcome of the disciplinary proceeding.   These challenges were unsuccessful.

On December 3, 2009, during the appeal of Case # 020, Montez had another encounter with Lt. Hampton.   This time the encounter happened while Montez was in line for the showers [Doc. # 1, p. 6].   Lt. Hampton ordered Montez to get out of the line and stand against the wall.   Montez alleges that, after he complied with the order, Lt. Hampton used profanity and racial epithets while threatening him for filing the grievance against him.   Montez reported the incident to Lt. Bolton who

3

replied that he would look into the matter.  Montez also filed a formal grievance

complaining about Lt. Hampton's conduct.  *Id.*  In reporting the incident, Montez

asked for "removal from population to transient due to fear for his safety."  *Id.*[3]

According Montez, the next confrontation between Lt. Hampton and him

was during a routine, biannual lockdown on January 18, 2010.  *Id*.  Montez states

that the lockdown entailed a search of the unit and inmates for contraband.   *Id*. at

6-7.  All of the inmates were required to go to the gym with their personal property

for inspection.  Montez states that he attempted to enter the gym, but Lt. Hampton

blocked his pathway and again threatened him for filing grievances against him

[Doc. # 1, p. 7].  Montez requested a higher ranking officer, and he was detained

until Captain Townsend arrived.   When Captain Townsend asked about the

problem, Montez alleges, he explained that Lt. Hampton was harassing him for

filing grievances against him.  Captain Townsend then handcuffed Montez and

placed him in "Prehearing Detention" ("PHD").  The next day Montez was charged

with violating prison disciplinary rules by creating a disturbance and failing to

obey an order (TDCJ Disciplinary Case # 20100136168 ("Case # 168")).  At the

disciplinary hearing on this case, held on January 26, 2010, Captain Baggett found

Montez guilty and assessed the following punishments: 15 days of solitary

confinement; 45 days of cell restriction; 45 days without commissary privileges; a

---

[3]      Montez does not specifically complain about the handling of this grievance.

reduction in custodial classification from Line Class II to Line Class III; and forfeiture of 45 days of good-time credit [Doc. # 1, p. 9].   On February 7, 2010, Montez filed a step 1 grievance appealing the decision in Case # 168.

While the appeal of Case # 168 was pending, Montez had an encounter with Officer Anderson on February 6, 2010 [Doc. # 1, p. 9].  Two days later, he was charged with violating prison disciplinary rules by exposing himself and masturbating while in Officer Anderson's presence (TDCJ Disciplinary Case # 20100156567 ("Case # 567")).  At the disciplinary hearing on Case # 567 held on February 18, 2010, Captain Baggett found Montez guilty of sexual misconduct and ordered the following punishments: 15 days of solitary confinement; 45 days of commissary and cell restriction; and forfeiture of 90 days of good-time credit [Doc. # 1, p. 10].  Montez filed step 1 and step 2 grievances which were unsuccessful.

On April 17, 2010, Montez was notified that his disciplinary conviction for creating a disturbance and failing to obey an order, Case # 168, was overturned and the matter was set for a another administrative proceeding under TDCJ disciplinary case # 20100302846 ("Case # 846"). [4]   *Id.* at 11.  On April 20, 2010, Captain Baggett found Montez guilty and ordered the same punishments that had been previously assessed: 15 days of solitary confinement; 45 days of cell restriction; 45

---

[4]      Montez identifies this disciplinary case as # 2010030846 on pages 11 and 12 of his complaint; however, Defendants' records reveal the correct case number is 20100302846 [Doc. # 34-3, p. 5].

days without commissary privileges; a reduction in custodial classification from Line Class II to Line Class III; and forfeiture of 45 days of good-time credit. Montez again filed step 1 and step 2 grievances challenging the outcome of the proceeding, but this time the appeals were unsuccessful.

Montez contends that he was wrongfully denied early release or parole because of the actions taken against him in Cases # 020, # 168/# 846, and # 567. He faults Wardens Pittman, Pierce and O'Hare for failing to overturn the disciplinary convictions.  Montez claims that all of the disciplinary charges were false and that he was denied due process.  He also contends that he is the victim of retaliation for filing grievances.

Montez presents four legal claims in his original pleading.

1.     Lt. Hampton, Captain Townsend, and Officer Anderson filed the charges against him in retaliation for his filing grievances against Lt. Hampton [Doc. # 1, p. 13].

2.     Captain Baggett and the counsel substitutes denied him due process during the hearings [Doc. # 1-2, p. 2].

3.     Captains Baggett and Townsend and Wardens O'Hare, Pierce, and Pitman were deliberately indifferent to his rights under the Eighth and the Fourteenth  Amendments of the Constitution by failing to provide adequate supervision and training for their subordinates whose acts violated       his rights to due process and freedom from retaliation [Doc. # 1-2, pp. 2-4].

4.     Defendants engaged in official misconduct in violation of state law by filing false charges and placing him in lockup thereby harming his chances for parole [Doc. # 1-2, p. 4].

6

Montez seeks declaratory relief and damages for these violations of his civil rights.

**B.**   **Defendants' Response**

Defendants assert that they are entitled to qualified immunity as state officials performing their duties at the Wynne Unit and that their conduct was not unreasonable in light of applicable constitutional rights afforded to Montez.  They contend that they did not knowingly violate Montez's constitutional rights; nor did they retaliate against him in violation of those rights.  Defendants deny that they were deliberately indifferent to Montez's constitutional rights under 42 U.S.C. § 1983, and they assert immunity under the Eleventh Amendment.  In support of their arguments, Defendants present relevant portions of Montez's Grievance Records (Exhibit A) [Docs. # 34-1 and # 34-2] and Disciplinary Records (Exhibit B) [Docs. # 34-3 and # 34-4].

With regard to Case # 020, Defendants present the TDCJ Offense Report [Doc. #34-4, p. 10] in which Lt. Hampton attested that Montez acted "in a hostile manner towards Hampton which resulted in a significant disruption of operations in that such acts caused the showers to be stopped."  Lt. Hampton further stated that Montez disobeyed his orders to stop talking and vacate the shower and became very belligerent telling Lt. Hampton to leave him alone.  *Id.*   Lt. Hampton also

reported that Montez said to him, "You ain't nothing but a punk bitch!" as he was being led out of the showers.

Defendants argue that the disciplinary action against Montez was based on his disruptive and disobedient behavior, and was not a response to the grievances he filed. Defendants also point out that Captain Baggett, the hearing officer who found Montez guilty and assessed punishment, did not initiate the disciplinary action. Moreover, Captain Baggett's decision was based on the evidence contained in the offense report.

With regard to Montez's complaint about Captain Townsend placing him in restraints during the shakedown on January 18, 2010, Defendants point out that Captain Townsend was not the charging officer, (TDCJ Case # 168/# 846) which was Lt. Hampton [Doc. # 34-3, p. 5]. Defendants also rely on the portion of the report showing that Montez initially refused to be cuffed. *Id.* Although Montez eventually submitted, his actions delayed the shakedown process for more than ten minutes. *Id*. Defendants argue that Montez's punishment was based on the evidence contained in the report and not on any retaliatory motive as alleged by Montez.

With regard to Case # 567, Defendants rely on the offense report by Officer Anderson, who stated she was picking up trays on Montez's cell row when she saw him holding his tray in his right hand and his penis in his left hand [Doc. # 34-3, p.

8

49].  She also stated that Montez was masturbating although she had told him to stop.  *Id*. at 49-50.   Defendants argue that the disciplinary actions taken against Montez were based solely on his infractions of the TDCJ rules. They further contend that there is no evidence demonstrating that they had the requisite motivation or intent to retaliate against Montez.

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

A movant is entitled to summary judgment if he shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  In considering such a motion, this court construes "all facts and inferences in the light most favorable to the nonmoving party."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotations marks omitted).  For summary judgment, the movant has the burden of showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  In doing so, the movant must establish the "absence of evidence to support an essential element of the non-movant's case."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal citations omitted).  The motion for summary judgment must be denied if the movant fails to meet this initial burden. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).  However, if the

movant does succeed in meeting this burden, the non-movant must go beyond the pleadings and identify specific facts showing that there is a genuine issue of a material fact warranting trial.  *Id.*

To prove there is an absence of evidence in support of the non-movant's claim, the movant must identify areas that are essential to the claim in which there is an "absence of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  However, the movant "need not negate the elements of the non-movant's case."  *Boudreaux v. Swift Transp. Co. Inc*., 402 F.3d 536, 540 (5th Cir. 2005).  Moreover, mere conclusions and allegations are not summary judgment evidence and cannot be used to defeat or support a motion for summary judgment.  *Topalian v. Ehrman*¸ 954 F.2d 1125, 1131 (5th Cir. 1992).  To successfully oppose a motion for summary judgment, the non-movant must present specific facts showing "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc.*, *v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003).  If the non-movant fails to point out evidence opposing summary judgment, it is not the court's duty to search the record for such evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## III.   MERITS LEGAL STANDARDS

### A.   Qualified Immunity

Defendants assert the defense of qualified immunity, which is an affirmative defense which shields public officials from civil liability for acts committed pursuant to their authorized duties. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Manis v. Lawson*, 585 F.3d 839, 845-846 (5th Cir. 2009). Qualified immunity protects government employees against claims brought against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wernecke v. Garcia,* 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow*, 458 U.S at 818) (internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

This protection is extended to "'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is applicable regardless of whether a government official's reasonable error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). The official is immune from suit if the law at the time of the constitutional violation does not give him fair notice that the

conduct is unlawful.  *Manis*, 585 F.3d at 846 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Determining whether a public official is entitled to qualified immunity entails a two-part inquiry by the reviewing court.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).   The first prong of the analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time.  *See id*. at 815-16;  *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citation omitted).   The second prong of the analysis asks whether qualified immunity is appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question."  *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss*., 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).   There is no mandatory sequence that the court must follow in applying the two parts of the qualified immunity test.  *Pearson*, 555 U.S. at 236.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.   *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).   An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated

clearly established law.  *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)).  The plaintiff bears the burden of negating the defense and cannot rest on conclusory assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.  *See Michalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof," but must offer more than "mere allegations") (quotation omitted).

### B.   <u>Retaliation</u>

"The purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford-El v. Britton,* 523 U.S. 574, 588 n.10 (1998)).  However, the courts are wary of such allegations because of the potential for prisoners to fabricate retaliation claims in response to unfavorable decisions by prison authorities.  *See Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods v. Smith*, 60 F.3d 1160, 1161 (5th Cir. 1996)); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).  In order to assert a retaliation claim, the prisoner must show "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that

right, (3) a retaliatory adverse act, and (4) causation." *McFaul v. Valenzuela*, 684 F.3d 564, 578 (5th Cir. 2012) (quoting *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *MacDonald,* 132 F.3d at 231 (quoting *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997)). In other words, the prison inmate must either produce direct evidence of motivation or show that but for some retaliatory motive the complained of incident would not have happened. *Allen v. Thomas,* 388 F.3d 147, 149 (5th Cir. 2004) (citing *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995)). The Court must also consider whether the plaintiff has shown that the defendant's adverse act caused him to suffer an injury that would "chill a person of ordinary firmness from continuing" to exercise the protected right. *Izen v. Catalina,* 398 F.3d 363, 367 (5th Cir. 2005).

### C.   Deliberate Indifference

The standard for "deliberate indifference" is used in cases concerning medical care or conditions of confinement in which state officials have knowingly and recklessly endangered a prisoner's health in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *See, e.g., Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976). To be "deliberately indifferent," the defendant official must be "(1) aware of facts from

14

which an inference of an excessive risk to [the plaintiff's] health or safety could be drawn and (2) [the official must draw an] inference that such potential for harm exist[s]." *Horn v. Vaughn*, 469 F. App'x 360, 363 (5th Cir. 2012) (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).  The risk must be a serious physical threat that is apparent and easily recognized.   *Gobert   v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Bias v. Woods*, 288 F. App'x 158 (5th Cir. 2008).

## IV.   **ANALYSIS**

Montez's claims are based on allegations that he was wrongly charged and disciplined in several TDCJ hearings in retaliation for exercising his constitutional rights.   To analyze the issues raised by Defendants in their summary judgment motion, the Court considers first whether Montez has shown there is a genuine issue of material fact that the official's conduct complained of violated a constitutional right that was clearly established at that time and, if so, whether, notwithstanding an alleged violation, there is a genuine and material fact issue that the Defendant under consideration acted in an objectively reasonable manner at the time of the conduct in question in light of the clearly established law.

15

### A.    Official Capacity Claims

Any claim asserted against defendants in their official capacities is considered a suit against the State.  *Hafer v. Melo*, 502 U.S. 21, 25-27 (1991).  The Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacities.  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Only claims for injunctive relief may be considered.  *Meza v. Livingston*, 697 F.3d 392, 412 (5th Cir. 2010) (citing *Ex Parte Young,* 209 U.S. 123, 159-160 (1908)). To establish liability on the part of the State, the plaintiff must demonstrate a policy or custom which caused the alleged deprivation.  *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978).  Allegations of isolated instances of deprivations do not establish liability of a policy maker.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Montez does not assert that Defendants' alleged acts against him were made pursuant to an official policy; nor does he present any facts indicating that the alleged acts were condoned by the TDCJ administration.  Therefore, he fails to assert any claims against Defendants in their official capacities.  *See Peterson v. City of Ft. Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009).

### B.    State Law Claims

Montez claims that Defendants engaged in official misconduct in violation of state law by filing false charges and disciplining him in violation of the prison

regulations which harmed his chances for parole [Doc. # 1-2, p. 4]. Texas statutory law does not create a private cause of action for damages where there are no specific provisions which clearly imply one. *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004) (citing *City of Beaumont v. Boullion*, 896 S.W.2d 143, 148-49 (Tex. 1995)). Montez cites no state law provision in support of his claim.

State law claims should be dismissed if the federal claims to which they are pendent have no legal basis. *See Premiere Network Services, Inc. v. SBC Communications, Inc.*, 440 F.3d 683, 692 (5th Cir. 2006) (citing *Parker v. Parsley Petroleum Co. v. Dresser* Indus., 972 F.2d 580, 585 (5th Cir. 1992)). Montez's argument that Defendants failed to observe prison regulations in disciplining him does not establish a violation of law. *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012) (citing *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989). His implied claim that his prison records contain false information is not actionable. *Velaquez v. Johnson*, 329 F.3d 420, 421 (5th Cir. 2003); *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Moreover, he has no protected right to be paroled before the expiration of his sentence. *Greenholz v. Nebraska Penal & Corrections*, 442 U.S. 1, 7 (1979). *See also Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997) ("In Texas, it is entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole."). Montez's state law claims are therefore dismissed.

### C.   Captain Baggett's Role in the Disciplinary Hearings

Montez sues Captain Baggett because the Captain served as the hearing officer in the several disciplinary proceedings against Montez.   Other than Montez's personal speculation, he has produced no evidence to support a finding that Captain Baggett violated his constitutional rights.   Prison disciplinary proceedings differ from criminal prosecutions, and prisoners in such proceedings are not entitled to the panoply of rights due a defendant in a criminal trial.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  More specifically, the outcome of a prison disciplinary hearing will be upheld if the prisoner receives basic due process, as the Supreme Court defines it, for convicted inmates: (1) a written notice of claimed violation, at least 24 hours in advance of the hearing; (2) written statement of the disciplinary hearing officer regarding the evidence relied on and the reason for disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense when permitting the inmate to do so would not be unduly hazardous to institutional safety or correctional goals.   *Id.* at 563-67.

Montez has produced no evidence, or even made an allegation, that he was denied these due process rights in connection with his disciplinary proceedings. Instead, Montez challenges the merits and the outcome of the charges against him, *i.e.*, he claims that he was falsely accused of infractions he did not commit.  This alone is not actionable.  *Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012)

("A claim that a prisoner was 'improperly charged with the things he did not do,' standing alone, does not state a due process claim.") (citing *Collins v. King,* 743 F.2d 248, 253 (5th Cir. 1984)); *Velasquez v. Woods*, 329 F.3d 420, 421 (5th Cir. 2003). Each hearing's record reveals some evidence of Montez's guilt sufficient to support Captain Baggett's decision. *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001) (the outcomes of prison administrative hearings will be upheld if there is "any evidence at all" to support them), *citing Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). *See also* cases cited *infra* at pp. 22-24.

Montez also complains that Captain Baggett was hostile and biased against him during the hearings [Doc. # 48, p. 9]. However, Montez offers no independent evidence in support of his personal, subjective view. There is no evidence that Captain Baggett had any role in initiating the charges against Montez. The Captain's only involvement was to preside over the hearings and determine whether there was evidence that Montez had done what he was accused of and thus was subject to punishment. Prison disciplinary hearing officers are authorized to make credibility determinations of the evidence and testimony presented during the proceedings. *Richards v. Dretke*, 394 F.3d 291, 295 (5th Cir. 2004) (citing *Hudson*, 242 F.3d at 537). Captain Baggett relied on materials submitted Lt. Hampton, who had firsthand knowledge of the incidents in issue. "Firsthand

knowledge is an indicator of reliability." *Id.* (citing *Smith v. Rabalais,* 659 F.2d 539, 541, 546 (5th Cir. 1981)).  Accepting Montez's allegations as true, Captain Baggett's adverse rulings are not sufficient to show that he had retaliatory intent generally or based on Lt. Hampton's grievances.

Montez also complains that Captain Baggett called him a "punk" and halted one of the hearings [Doc. # 48, p. 17].  Montez also asserts that Captain Baggett "badgered" him during one of the hearings when he tried to challenge the disciplinary charges [Doc. # 48, p. 8].  "[V]erbal abuse by a guard does not give rise to a cause of action under § 1983."  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  Accepting Montez's allegations as true, Captain Baggett's negative remarks may have been rude, but do not rise to a constitutional violation. Nor are they sufficient to show that Captain Baggett had retaliatory intent relating to Lt. Hampton's grievances.[5]

In any event, Montez presents no non-speculative evidence to demonstrate that the Captain had a motive to violate Montez's rights or to harm him.  Montez presents no chronology or chain of events from which retaliation may be plausibly

---

[5]      Nor are these assertions sufficient to establish against Captain Baggett a due process violation in the prison hearing context.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *Venturini v. Mukasey*, 272 F. App'x 397, 401 (5th Cir. 2008) (immigration judge's comment, "[I]t does seem like he's a big coward or he is not genuine when he says he wants to fight for the party but then leaves the country," did not establish due process violation).

inferred with regard to Captain Baggett.  *Armenta v. Pryor*, 377 F. App'x 413, 416-17 (5th Cir. 2010); *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004).  Montez thus fails to raise a genuine fact issue that Captain Baggett retaliated against him and thus violated his constitutional rights.

In any event, Montez's evidence does not overcome the second prong of the qualified immunity test, namely, Montez's evidence does not present a genuine fact issue that Captain Baggett's acts were not objectively reasonable in reference to clearly established constitutional rights at the time in issue.  Baggett's alleged rude language and demeanor during the hearings may have been unprofessional, but has not been established to have been unreasonable under the circumstances so as to preclude qualified immunity.  *See Jackson v. Harris*, 446 F. App'x 668, 670 (5th Cir. 2011) (parole officer's use of threats and threatening language and gestures during interview of rape suspect did not amount to a constitutional violation) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).  Captain Baggett's conduct was objectively reasonable under clearly established law at the time the conduct occurred.  *Id.* (citing *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).   Montez's claims against Captain Baggett are therefore dismissed.

### D.     Officer Anderson's Claim that Montez Engaged in Sexual Misconduct

Officer Anderson charged Montez with sexual misconduct in violation of TDCJ rules. Captain Baggett sustained the charge after affording Montez due process in a TDCJ disciplinary hearing. Montez contends that Officer Anderson brought the charge in retaliation against him for Montez's filing grievances against others. Montez has not presented non-speculative evidence Anderson had any motive to retaliate against him. *See MacDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Montez's retaliation claims are based on the grievances he filed against Lt. Hampton. To succeed on this theory, Montez must establish a genuine fact issue that there is a causal connection between the grievances he filed against Lt. Hampton and the disciplinary charges filed by Officer Anderson. *King v. Zamiara*, 150 F. App'x 485, 496 (6th Cir. 2005). Indeed, Montez must show that the complained of conduct would not have occurred unless Anderson had a retaliatory motive. *Moles v. Lappin*, 477 F. App'x 501, 507 (10th Cir. 2012) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

Montez has not met his summary judgment burden that Officer Anderson engaged in or was motivated by retaliation against him for his filing grievances against Lt. Hampton. He has produced no evidence that Officer Anderson was even aware of these grievances. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309,

320 (5th Cir. 2004).  Montez has failed to raise a genuine fact issue that Officer Anderson violated his constitutional rights by retaliating against him.

Furthermore, there is no evidence that Officer Anderson's conduct was objectively unreasonable in context of Montez's clearly established rights. Therefore, Officer Anderson is entitled to qualified immunity and Montez's claim against her will be dismissed.

### E.     Captain Townsend's Response to Disruption

Captain Townsend's involvement with Montez is limited to his intervention made in response to Montez's request for a higher ranking officer during the January 18, 2010 incident.   Montez appears to contend that Captain Townsend retaliated against him because he, Montez, filed one or more grievances against Lt. Hampton.  There is no evidence to support a finding that Captain Townsend was even aware that Montez had filed any grievances or that Captain Townsend had any motivation to retaliate against Montez.  *See Davis,* 383 F.3d at 320.  Montez accordingly has not raised a genuine fact issue that there was a violation of his constitutional rights by Captain Townsend in his restraint him of Montez.

Moreover, to the extent Montez might be contending that he was improperly restrained by Captain Townsend, the administrative record refutes this theory.  The record reveals that Montez was disruptive during a lockdown process and refused to submit to authority.  *See* Doc. # 34-3, p. 5.  Being a custodial officer in a prison,

Captain Townsend had the duty to maintain order among the inmate population. *See Jackson v. Kelly*, --- F.  App'x ---, 2013 WL 586855, at *3 (5th Cir. Feb. 6, 2013) (citing *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998)).  Moreover, a custodial officer is authorized to use reasonable force to achieve this objective.  *Id. See also Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) ("The Constitution is not offended when force is used 'in a good-faith effort to maintain or restore discipline.'") (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Finally, there is no evidence that Captain Townsend's conduct was unreasonable in light of Montez's clearly established constitutional rights.  The decision to place Montez in restraints was a reasonable custodial response to a situation that could have deteriorated into a violent confrontation.  *See Baldwin*, 137 F.3d at 840.  Captain Townsend is entitled to qualified immunity and Montez's claim against him will be dismissed.

### F.    Wardens O'Hare, and Pittman – Supervisors

Montez contends that Wardens Pittman, Pierce and O'Hare violated his rights by not overturning his disciplinary convictions.  He complains that he has been forced to serve more time in prison because he has lost good-time and his chances of being granted parole have been harmed as a result of the disciplinary hearings.

Like all prisoners, Montez does not have a protected right to be released before the expiration of his sentence. *Greenholtz v. Nebraska Penal & Corrections*, 442 U.S. 1, 7 (1979); *Gilbertson v. Texas Board of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993). Parole is a privilege, not a right. *Id.* To the extent that Montez contends that he wrongfully lost good-time credits pursuant to the disciplinary proceedings, such a claim is not cognizable in a civil rights action. *Orange v. Ellis*, 348 F. App'x 69, 72 (5th Cir. 2009) (citing *Edwards v. Balisok*, 520 U.S. 641, 643 (1997)). He must utilize the habeas corpus process to challenge the validity of the duration of his confinement. *Id.*; *Kennedy v. State of Texas Pardons and Paroles*, 136 F. App'x 712, 713 (5th Cir. 2005) (citing *Wilkinson v. Dotson*, 1242, 1247 (2005).

In addition to failing to assert an actionable claim concerning the effects of the disciplinary actions, Montez's claim against the wardens cannot succeed because he does not have a federally protected liberty interest in having his grievances decided in his favor. *Morris v. Cross*, 478 F. App'x 783, 785 (5th Cir. 2012) (citing *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)). Montez does not have a right to a grievance system which is responsive to his perceived injustices. *Gieger*, 404 F.3d at 373-74; *see also Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest

that such procedures are "constitutionally mandated"); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."). Montez fails to show that wardens Pittman, O'Hare or Pierce violated his constitutional rights.

It is noted that Pierce has not answered or joined in Defendants' motion for summary judgment.[6] In any event, Defendants' motion demonstrates that Montez has no cause of action against Pierce, and Pierce is entitled to benefit of summary judgment. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). Montez's request for a default judgment against Pierce is denied. Having failed to raise a genuine fact issue that Wardens Pittman, O'Hare or Pierce violated his constitutional rights, Montez's claims against these individuals fail in the face of their qualified immunity and are dismissed.

## G.   **Lieutenant Hampton**

---

[6]    Pierce is not represented in this proceeding and is no longer a TDCJ employee. *See* fn. 2.

As noted at the outset, Lieutenant Hampton has not entered an appearance in this case.  Nor has he joined Defendants' motion for summary judgment.  Hampton is no longer an employee in the TDCJ system.

Montez has moved for a default judgment against him.  "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *McCarty v. Zapata County*, 243 F. App'x 792, 794 (5th Cir. 2007) (quoting *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001)).   Default judgment is a drastic remedy that should only be resorted to in extreme situations. *Warren v. Johnson*, 244 F. App'x 570, 571 (5th Cir. 2007) (citing *Lewis*, 236 F.3d at 767).  The motion for default judgment [Doc. #42] is denied without prejudice at this time.

It is noted that Montez has submitted witness statements supporting his allegations that Lt. Hampton was verbally abusive towards him and harassed him [Doc. # 48-2, pp. 1-3].  Although verbal harassment alone is not actionable in a prisoner civil rights case, such behavior may amount to an actionable violation if it is done in retaliation against an inmate for exercising his constitutional rights.  *See Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991).  On the current record, the Court cannot determine whether Hampton's alleged behavior was or was not justified, or whether it even occurred.  Despite being served with notice of the suit [Doc. # 32 (sealed)], Hampton has not responded to Montez's claims.

27

The Attorney General states that he is not authorized to represent Hampton because he is no longer an employee of the TDCJ, although the State may still be obligated to indemnify him for certain liability arising from his past services as a prison official.   *See* TEX. CIV. PRAC. & REM. CODE § 104.001(2).   Therefore, the Court needs clarification.   It is therefore

ORDERED that the **ATTORNEY GENERAL SHOW CAUSE** on or before **May 31, 2013**, why he cannot represent Hampton in this suit.   It is further

ORDERED that **HAMPTON SHOW CAUSE** in writing on or before **June 14, 2013**, why default judgment in favor of Montez should not be entered against him.

## V.   <u>MONTEZ'S OTHER MOTIONS</u>

Montez has filed a motion to amend the court's scheduling order seeking additional time to respond to Defendants' motion for summary judgment [Doc. # 37] and permit the filing of his response [Doc. # 48].   The Court **GRANTS** the motion, and Montez's response [Doc. # 48] is deemed timely filed.

Montez has filed a motion for discovery [Doc. # 39]. The discovery sought is **DENIED**.   Montez seeks all work-related disciplinary records, including any and all hearings on suspensions or transfers for a two year period, from Defendants who are entitled to qualified immunity.   *Crawford-El v. Britton*, 523 U.S. 574, 588

(1998); *Vander Zee v. Reno*, 73 F.3d 1365, 1368-69 (5th Cir. 1996).   This information is irrelevant.

Montez has also filed three motions for summary judgment against Defendants [Docs. # 48, # 49, and # 50] which the Court **DENIES** for the reasons stated in this Memorandum and Order.

## VI.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1.    Defendants' motion for summary judgment [Doc. # 34] is **GRANTED.**

2.    Montez's claims against Defendants Anderson, Baggett, Townsend, O'Hare, and Pierce, Pittman are **DISMISSED**.

3.    Montez's motion for an extension of time respond [Doc. #37] is **GRANTED**.

4.    All other motions [Docs. # 39, # 42, # 48, # 49, and # 50] are **DENIED.**

5.    Assistant Attorney General Patrick Todd shall **SHOW CAUSE** on or before **May 31, 2013**, why he or another Assistant Attorney General will not represent Defendant Hampton in this suit.

6.    Defendant Hampton shall **SHOW CAUSE** on or before **June 14, 2013**, why judgment in favor of Montez should not be entered against him.

**The Clerk is directed to provide a copy of this Memorandum and Order to the parties including Cody Hampton whose address is under seal [Doc. #32].**

SIGNED at Houston, Texas on **May 15, 2013.**

Nancy F. Atlas
United States District Judge